NOTICE

Decision filed 08/03/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250374-U

NO. 5-25-0374

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 24-CF-234 |
| | ) | |
| ALLEN M. WILLIAMS, | ) | Honorable |
| | ) | Matthew D. Lee, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE SHOLAR delivered the judgment of the court.
Justices Vaughan and Hackett concurred in the judgment.

**ORDER**

¶ 1     *Held*:   Where the trial court failed to admonish defendant about his right to counsel at his posttrial motions and sentencing, we vacate the trial court's order denying defendant's posttrial motions, vacate defendant's sentence, and remand to the trial court for the appointment of counsel for new posttrial motions and sentencing.

¶ 2     A Champaign County jury found defendant, Allen Williams, guilty of attempted first degree murder. The trial court sentenced him to 45 years in the Illinois Department of Corrections (IDOC). On appeal, defendant argues that he was denied his constitutional right to counsel at his posttrial motion and sentencing. For the reasons that follow, we vacate the trial court's order denying defendant's posttrial motions, vacate defendant's sentence, and remand to the trial court for the appointment of counsel for new posttrial motions and sentencing.

1

¶ 3                                    I. BACKGROUND

¶ 4      The State charged defendant by two-count information with: count I, attempt (first degree murder), and count II, aggravated battery with a firearm. Count I alleged that defendant, intending to commit the offense of first degree murder, took a substantial step toward committing the murder, in that he, without lawful justification and with the intent to kill Antonio Bowman, fired a gun in his direction and personally discharged a firearm that proximately caused great bodily harm, permanent disability, or permanent disfigurement. Count II alleged that defendant, while committing a battery, knowingly discharged a firearm thereby causing bodily harm to Antonio Bowman. The trial court appointed the public defender, Ms. Pollock, to represent defendant.

¶ 5      On October 17, 2024, the trial court held a hearing wherein defendant advised the court that he wished to obtain new counsel. The court noted that on October 11, the public defender alerted the court by email that defendant requested a new attorney. Defendant advised the court that he asked his counsel to "file a motion for ineffective counsel." Defendant put his grievances on the record, and after hearing defendant, the trial court noted that the claims defendant expected his counsel to pursue were "frivolous or irrelevant or ineffectual."

¶ 6      The trial court explained to defendant that he could have the public defender's office continue to represent him. However, the court declined to appoint another attorney outside of the public defender's office. The court advised defendant that he could represent himself or he could hire private counsel. After a back-and-forth about the nature of defendant's allegations against his public defender, the trial court asked:

          "THE COURT: *** What do you want to do with your case?

          THE DEFENDANT: I mean, I don't have any—any funds to retain a—a lawyer, especially for a—a charge such as this one.

                                            2

It's just that—and I—I'm not equipped, intelligently, to represent myself.

But—so, I—I'm—I guess I'm condemned to these circumstances."

The trial court agreed that defendant was "not equipped to represent" himself. The court noted that it "would strongly advise against it." Defendant continued to be represented by appointed counsel.

¶ 7     On February 18, 2025, defendant requested to proceed *pro se*. The trial court stated that the public defender emailed the court to advise the court that defendant wished to represent himself. The court asked defendant:

"THE COURT: All right. All right. Mr. Williams, is it your wish to waive your right to representation and represent yourself in this case?

THE DEFENDANT: Well, I've been deprived my right of effective counsel, so I have no other choice but to represent myself.

THE COURT: All right. And I understand that that's how you feel, but I guess I'm gonna disagree with you when you say you have no other choice."

The trial court explained:

"I'm about to go through this hearing where I'm gonna explain to you your rights, as well as admonish you about the—the dangers and the—basically what the court requires me to tell you if you're gonna fire your attorney and represent yourself because it's universally considered a very, very bad decision, but I'm gonna explain all that to you and then after I've gone through those admonitions to make sure that you are knowingly and understandingly and voluntarily waiving your right to counsel to represent yourself I want to explain to you before we get there that if that happens and you end up representing yourself I don't want you to misunderstand and think that, well, now that I'm the boss and

3

I'm the attorney for myself then you—the Court has to hear my motion for ineffective assistance of counsel right away."

¶ 8 Defendant stated that he understood. The trial court then admonished defendant. The court first explained the nature of the charges and the possible penalties. At the end of the admonishments, the trial court explained:

"THE COURT: *** And when I say that I don't want to mislead you in another sense in that this is basically your decision as to whether you want me to fire your court-appointed attorney, meaning that you're not gonna get a chance to say, Judge, I change my mind. I want my court-appointed attorney again. If you ever at any point hire your own attorney, again a private attorney, with your own money or your family's money or your friends you can do that and I'm not gonna, like, say you can't have that attorney, but I'm saying we've already given you a court-appointed attorney. Your court-appointed attorney has represented you for several months, and if you want to fire her at this late hour I'm gonna let you do that as long as you're making this decision knowingly and understandingly but I don't want to suggest that means that you can't hire your own attorney if that's what you want to do. Does that make sense?

THE DEFENDANT: Yeah"

Following admonishments, the trial court found that defendant knowingly and voluntarily waived counsel.

¶ 9 On March 10, 2025, defendant proceeded to a jury trial *pro se*. Following pretrial motions and picking a jury, defendant asked "the court to appoint me counsel or appoint me a sit-in counsel to assure—to ensure me a fair trial. And if the court demands me to go to trial today, I would ask

4

for any public defender to be able to assist me in this case." The State responded, noting that the case had been continued "multiple times on the defendant's request." Defendant stated:

"Also, when I chose to go *pro se*, I was instructed—I was asked was—have, have I—what was the highest education I received, which was a high school diploma, that is true; however, when you get your high school diploma, they don't teach you anything about the rules of the court or how a trial is conducted.

THE COURT: That's true, Mr. Williams, but I do need to remind you, sir, that I told you numerous times during the 401 Admonitions when you decided to fire the public defender's office that you would be held to obey the rules of evidence, even though you may not know them. And for you to say that you want, first of all, for the court to appoint stand-by counsel in a case of this nature—now I'll say this is, obviously, a very serious case when it comes to the charges and possible penalties, but it is not a complicated case. It is not the type of thing that stand-by counsel would ordinarily be—even be considered for in terms of the complexity of the issues that are involved. And when you're saying that you don't even know and have the faintest clue how to lay a foundation for an exhibit, that's basically one of the first things that an attorney would know how to do."

The court continued:

"I'm gonna deny your request on the eve of us actually having the jurors brought in to begin opening statements for you—request for either a continue or for appointed counsel or standby counsel. That is—we're way late in the game for that, Mr. Williams.

And, again, unfortunately, you, you've made your bed, and now you're gonna have to—you know, you're gonna have to essentially live with your decision. And it's a huge decision, but, again, this is like the third or fourth time we've been set for trial. Yes,

5

you made a specific decision that I actually granted over your attorney's disagreement in October, but even the other decisions she made to continue the case are attributable to you because she's your attorney, so she gets to make those decisions; all right?"

¶ 10 A jury ultimately convicted him of attempted first degree murder while personally discharging a firearm that proximately caused great bodily harm, permanent disability, or permanent disfigurement, to his cousin, Antonio Bowman. Following the verdict, the trial court asked the parties how much time was needed for posttrial motions and sentencing. The following exchange occurred:

"THE COURT: All right. Mr. Williams, do you believe two hours is gonna be enough time for you as well?

THE DEFENDANT: Two hours for what?

THE COURT: For any hearing on any post-trial motions that are filed as well as the sentencing hearing, if we reach that.

THE DEFENDANT: Exactly what is that?"

¶ 11 The trial court explained the purpose of a posttrial motion. Defendant asked for "an example of what those motions would look like?" The trial court responded, "I really can't. Mr. Williams, again, now you're asking me to kind of give you legal advice, and, and, at this point, it's not appropriate for me to do that."

¶ 12 Defendant filed a *pro se* motion for a new trial and a *pro se* motion to alter or amend the judgment, which included the same allegations as the motion for new trial with the addition of an allegation that counsel was ineffective before her discharge. Relevant to this appeal, the motion for new trial alleged that defendant was denied the right to appointed counsel or standby counsel

after he was allowed to represent himself, hindering his ability to effectively represent himself and object to inadmissible evidence offered by the State.

¶ 13 On April 29, 2025, the trial court held a hearing on defendant's posttrial motion and sentencing. Defendant did not present any evidence, proffer, or argument in support of his motion for a new trial. In response to defendant's allegation about appointed counsel or standby counsel, the trial court stated:

> "Mr. Williams argues that he was denied the right to have appointed counsel and/or sit-in counsel, as he states it. First of all, I'll note that when Mr. Williams requested that he be allowed to represent himself, the Court had a hearing on that and admonished Mr. Williams as to his right to have counsel represent him as well as his right to waive that right pursuant to Supreme Court Rule 401. That hearing was, again, held prior to the trial commencing at an earlier hearing in which the Court did in a good amount of detail explain to Mr. Williams the ramifications of his decision to fire his attorney. I explained that he would not be getting another attorney from the public defender's office or somewhere else just because he wanted to fire his attorney. I explained that his options were to either hire an attorney, represent himself, or maintain his attorney that had been appointed to him, Ms. Pollock. And at that time there was another hearing we had before that in which he elected to keep his attorney and then later decided that he wanted to fire Ms. Pollock. Again, the Court finds that my decision not to appoint alternate counsel was the correct one. And again, Mr. Williams, if I'm not mistaken, also I think the morning of the trial reiterated his request to have counsel appointed. And I again rejected his request."

The court continued:

"He then mentions asking for stand-by counsel, which I think is what he's referring to when he says sit-in counsel. The Court also, again, found that this was not in a situation where stand-by counsel would be appropriate. Although these are obviously very serious charges, this is not a complicated case. This is not a case that involves, you know, scientific evidence or very complex testimony of experts and things of that nature. And so, again, I declined to appoint stand-by counsel, and I continue to find that those decisions were the correct ones."

¶ 14 The court denied the motion for a new trial. Following argument from the parties, the trial court sentenced defendant to 45 years in IDOC.

¶ 15 This timely appeal followed.

¶ 16 II. ANALYSIS

¶ 17 On appeal, defendant contends that he was denied his constitutional right to counsel at the critical stages of posttrial motions and sentencing. Specifically, he argues that he discharged his public defender and proceeded to trial *pro se*, however, "he was never told that he had the right to counsel at all stages of the proceedings or that counsel could be reappointed at later stages of the proceedings." Defendant argues that the trial court "led" him to "believe that once he fired appointed counsel, he could never again have court appointed counsel." The State responds, arguing that the trial court substantially admonished defendant under Rule 401(a), and his valid waiver of counsel remained in effect under the continuing waiver rule for all remaining stages of the proceedings, including posttrial motion and sentencing. For the reasons that follow, we vacate the trial court's order denying defendant's posttrial motions, vacate defendant's sentence, and remand to the trial court for the appointment of counsel for new posttrial motions and sentencing.

8

¶ 18    Initially, we note that the State contends that this issue is forfeited where defendant's posttrial motion argued that he was denied the right to appointed counsel or standby counsel for his jury trial, not for his posttrial motions and sentencing hearing. The State contends that because defendant failed to object during his posttrial motion hearing or sentencing hearing or raise the issue in motions subsequent to those proceedings, his claim is now forfeited on appeal.

¶ 19    Illinois courts have long held that an issue is forfeited on appeal unless a party makes an objection at the time of the purported error and specifically raises the issue in a written posttrial motion. *People v. Bowens*, 407 Ill. App. 3d 1094, 1108 (2011); *People v. Thompson*, 238 Ill. 2d 598, 611 (2010). The plain error doctrine, however, is a narrow and limited exception to the general rule of procedural default which allows plain errors or defects affecting substantial rights to be noticed although the error or defect was not brought to the attention of the trial court. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010). An otherwise unpreserved error may be noticed under the plain error doctrine, codified in Illinois Supreme Court Rule 615 (eff. Jan. 1, 1967), if the defendant first demonstrates that a clear or obvious error occurred and then shows that either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) the "error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Compliance with Rule 401(a) has been held by Illinois courts as reviewable under the second prong of the plain error doctrine. See *People v. Seal*, 2015 IL App (4th) 130775, ¶ 26; *People v. Black*, 2011 IL App (5th) 080089, ¶ 24.

¶ 20    The initial step in conducting a plain error analysis is to determine whether an error actually occurred. *People v. Walker*, 232 Ill. 2d 113, 124 (2009). Without reversible error, there can be no

9

plain error. *People v. Naylor*, 229 Ill. 2d 584, 602 (2008). As such, we must first determine whether defendant was denied his constitutional right to counsel at the posttrial motions and sentencing. A trial court's compliance with supreme court rules is a question of law that we review *de novo*. *People v. Bahrs*, 2013 IL App (4th) 110903, ¶ 13.

¶ 21 Illinois Supreme Court Rule 401(a) requires the trial court to inform the defendant, and determine the defendant's understanding, of the following:

"(1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." Ill. S. Ct. R. 401(a) (eff. July 1, 1984).

¶ 22 In the case before us, the parties agree that the trial court substantially complied with Rule 401 when it admonished defendant prior to accepting his waiver of counsel. However, defendant contends that the court failed to advise him that he had the right to counsel for posttrial proceedings.

¶ 23 "A defendant is entitled to the representation of counsel at all critical stages of a criminal prosecution, and this important right will not be taken away unless affirmatively waived by a defendant." *People v. Burton*, 184 Ill. 2d 1, 22 (1998). Under the continuing waiver rule, a defendant can waive the right to counsel and that waiver remains in place throughout the remaining stages of the case. *People v. Baker*, 92 Ill. 2d 85, 91-92, 95 (1982). There are two exceptions to the continuing waiver rule that necessitate another Rule 401 admonishment. *Id.* Those exceptions are (1) when a defendant later requests counsel or (2) when other circumstances suggest that the

10

waiver is limited to a particular stage of the proceedings. *Id.* at 91-92; see also *People v. Palmer*, 382 Ill. App. 3d 1151, 1162 (2008).

¶ 24    First, we consider the first exception to the continuing waiver rule, whether defendant later requested counsel. We observe that following the Rule 401 admonishments from the trial court, the judge stated:

> "And when I say that I don't want to mislead you in another sense in that this is basically your decision as to whether you want me to fire your court-appointed attorney, meaning that *you're not gonna get a chance to say, Judge, I change my mind. I want my court-appointed attorney again.* If you ever at any point hire your own attorney, again a private attorney, with your own money or your family's money or your friends you can do that and I'm not gonna, like, say you can't have that attorney, but I'm saying we've already given you a court-appointed attorney. Your court-appointed attorney has represented you for several months, and if you want to fire her at this late hour I'm gonna let you do that as long as you're making this decision knowingly and understandingly but I don't want to suggest that means that you can't hire your own attorney if that's what you want to do."
>
> (Emphasis added.)

¶ 25    Following pretrial motions and picking a jury, defendant asked "the court to appoint me counsel or appoint me a sit-in counsel to assure—to ensure me a fair trial. And if the court demands me to go to trial today, I would ask for any public defender to be able to assist me in this case." The trial court denied defendant's request. Defendant does not claim that the trial court erred by denying his request for counsel at this point in time.

¶ 26    However, following the completion of his jury trial, defendant expressed confusion about posttrial motions. The trial court explained the purpose of a posttrial motion. Defendant asked for

11

"an example of what those motions would look like?" The trial court responded, "I really can't. Mr. Williams, again, now you're asking me to kind of give you legal advice, and, and, at this point, it's not appropriate for me to do that."

¶ 27    Although defendant originally received proper Rule 401 admonishments, the subsequent comments by the trial court, though not entirely incorrect but not fully explained, may have caused defendant confusion as to whether defendant could request counsel again. Standing alone, the questions by defendant might be construed as seeking advice or clarification as opposed to a specific request for counsel. However, such questions by defendant, in light of the court having knowledge that defendant had at trial requested that counsel be re-appointed, was an indication to the judge that defendant sought legal assistance at this critical stage of posttrial proceedings. Though not specifically worded as a request for a re-appointment of counsel, with the circumstances in this case, this created a situation where the trial court should have then again inquired or admonished defendant concerning a waiver of legal representation. The facts herein give a sufficient basis to find an exception to the continuing waiver rule as defendant, in effect, requests counsel. Having found that the first exception to the continuing waiver rule applies, we need not consider the second exception.

¶ 28    We find support for our position in *People v. Griffin*, 305 Ill. App. 3d 326 (1999). In *Griffin*, the defendant waived his right to counsel and entered into a guilty plea. *Id.* at 329. After the trial court admonished the defendant pursuant to Rule 605(b), the defendant asked in open court whether a motion to vacate the sentence was required to perfect an appeal and inquired whether an attorney could be appointed to represent him in his appeal. *Id.* The trial court responded that the defendant was entitled to an attorney, but declined to advise him further, noting that to do so would be to act as defendant's attorney. *Id.* The defendant failed to file a postplea motion or a

timely notice of appeal, but the Second District Appellate Court granted him leave to file a late notice of appeal. *Id.* at 328.

¶ 29    On appeal, the defendant contended that Rule 604(d) required the trial court to ask him whether he desired the assistance of counsel for preparation of postplea motions, because he manifested an interest in appealing. *Id.* at 330. The Second District held that a trial court is required to investigate whether an indigent, *pro se* defendant desires counsel whenever he manifests an interest in appealing from a judgment entered upon a guilty plea, even if he does not file a written postplea motion. *Id.* at 331-32. The *Griffin* court remanded for appointment of counsel and the preparation and presentation of any available postplea motions. *Id.* at 332.

¶ 30    Similarly, here, defendant's statement seeking assistance with the filing of posttrial motions was an indication to the judge that defendant sought legal advice. Similar to *Griffin*, this created a circumstance where the trial judge should have inquired or admonished him again concerning the waiver of legal representation. Even if the defendant does not request counsel, the court must ascertain whether the defendant desires counsel. *Id.* at 330. Based on the record before us, defendant's inquiry should have triggered the trial court's duty to inquire whether defendant desired the assistance of counsel for preparation of posttrial motions.

¶ 31    Based on the specific facts and circumstances of this case, the trial court's failure to advise defendant about his right to counsel for posttrial motions and sentencing denied defendant of his constitutional right to counsel. We therefore vacate the trial court's order denying defendant's posttrial motions, vacate defendant's sentence, and remand to the trial court for the appointment of counsel and for new posttrial motions and sentencing.

¶ 32                                    III. CONCLUSION

¶ 33    For these reasons, we vacate the Champaign County trial court's order denying defendant's posttrial motions, vacate defendant's sentence, and remand to the trial court for the appointment of counsel and for new posttrial motions and sentencing.


¶ 34    Sentence vacated; cause remanded with directions.